**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**LAURA M. CLOUSER**
Tipton, Indiana

ATTORNEYS FOR APPELLEE:

**MICHAEL C. PRICE**
DCS, Hamilton County Local Office
Noblesville, Indiana

**ROBERT J. HENKE**
DCS Central Administration
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

IN THE MATTER OF THE TERMINATION ) 
OF THE PARENT-CHILD RELATIONSHIP )
OF: Q.R. (Minor Child); J.B. (Mother), and )
J.R. (Father), )
    Appellant-Respondent, )
            )
           vs. )    No.  80A02-1211-JT-909
            )
THE INDIANA DEPARTMENT OF CHILD )
SERVICES, )
    Appellee-Petitioner. )

APPEAL FROM THE TIPTON CIRCUIT COURT
The Honorable Thomas R. Lett, Judge
Cause No. 80C01-1202-JT-26

**June 12, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

J.B. ("Mother") appeals an order terminating her parental rights to Q.R. upon the petition of the Tipton County Department of Child Services ("DCS"). We affirm.

**Issue**

Mother presents a single issue for appeal: whether DCS established, by clear and convincing evidence, the requisite statutory elements to support the termination of parental rights.

**Facts and Procedural History**

Q.R. was born out-of-wedlock in 2005. At his birth, Q.R. tested positive for drugs. He was in the legal custody of Mother although he frequently lived with Mother's father ("Grandfather").

In October of 2010, Mother was operating a moped while intoxicated, with Q.R. as a passenger. Mother, who was also in possession of a controlled substance, was arrested. Due to Mother's arrest, Q.R. was placed temporarily with J.R. ("Father"). On November 26, 2010, DCS conducted an investigation into the death by blunt force trauma of another child in Father's household. At that time, Q.R. was detained and placed in foster care.

On March 24, 2011, Mother appeared at a hearing at which Q.R. was found to be a Child in Need of Services ("CHINS"). On April 20, 2011, the CHINS court ordered Mother to participate in various services and allowed Q.R. to return to Mother's care in a trial home visit arrangement.

On July 11, 2011, DCS removed Q.R. from Mother and placed him with Grandfather

due to Mother's continued substance abuse and failure to comply with policies of her methadone treatment program. On August 2, 2011, the CHINS court conducted a hearing and found Mother to be non-compliant with the case plan because she had been intoxicated at a visitation session and had failed to show up for a home-based therapy session. On September 20, 2011, Mother was found in contempt of court for refusal to comply with requested drug screens; she was given a suspended sentence. On October 17, 2011, the CHINS court ordered Mother to be incarcerated due to her continued lack of compliance.

On February 16, 2012, DCS filed a petition to terminate Mother's and Father's parental rights.[1] On the following day, Mother overdosed on a combination of drugs and was hospitalized for several days. Services to Mother were discontinued, with the exception that DCS contemplated Mother having visitation with Q.R. However, in April of 2012, Mother requested that visitation not commence so that she could "work on her personal issues." (Tr. 44.)

On August 21, 2012, the juvenile court conducted a hearing and took the petition for termination of parental rights under advisement. On October 16, 2012, the juvenile court issued its Findings of Fact, Conclusions of Law, and Judgment granting the petition for termination of parental rights. Mother now appeals.

**Discussion and Decision**

A. Standard of Review

Our standard of review is highly deferential in cases concerning the termination of

---

[1] Father agreed to the termination of his parental rights and is not an active party to this appeal.

parental rights.  In re K.S., 750 N.E.2d 832, 836 (Ind. Ct. App. 2001).  This Court will not set aside the trial court's judgment terminating a parent-child relationship unless it is clearly erroneous.  In re A.A.C., 682 N.E.2d 542, 544 (Ind. Ct. App. 1997).  When reviewing the sufficiency of the evidence to support a judgment of involuntary termination of a parent-child relationship, we neither reweigh the evidence nor judge the credibility of the witnesses.  Id. We consider only the evidence that supports the judgment and the reasonable inferences to be drawn therefrom.  Id.

### B. Requirements for Involuntary Termination of Parental Rights

Parental rights are of a constitutional dimension, but the law provides for the termination of those rights when the parents are unable or unwilling to meet their parental responsibilities.  Bester v. Lake Cnty. Office of Family & Children, 839 N.E.2d 143, 147 (Ind. 2005).  The purpose of terminating parental rights is not to punish the parents, but to protect their children.  In re L.S., 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), trans. denied.

Indiana Code Section 31-35-2-4(b)(2) sets out the elements that DCS must allege and prove by clear and convincing evidence in order to terminate a parent-child relationship:

(A) that one (1) of the following is true:

    (i)     The child has been removed from the parent for at least six (6) months under a dispositional decree.

    (ii)    A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.

    (iii)   The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22)

4

months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B) that one (1) of the following is true:

    (i)     There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

    (ii)    There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

    (iii)   The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

If the court finds that the allegations in a petition described above are true, the court shall terminate the parent-child relationship. Ind. Code § 31-35-2-8(a). A trial court must judge a parent's fitness to care for his or her child at the time of the termination hearing, taking into consideration evidence of changed conditions. In re J.T., 742 N.E.2d 509, 512 (Ind. Ct. App. 2001), trans. denied. The trial court must also "evaluate the parent's habitual patterns of conduct to determine the probability of future neglect or deprivation of the child." Id.

## C. Analysis

Mother contends that insufficient evidence supports the termination order. More specifically, she claims that the juvenile court "erred when not giving the appropriate weight to the Mother's current fitness to care for the child." Appellant's Br. at 11.

Mother does not challenge the trial court's determination pursuant to Indiana Code

5

Section 31-35-2-4(b)(2)(A) (removal from parent), (C) (best interests of the child) or (D) (satisfactory plan). She challenges the determination relating to Indiana Code Section 31-35-2-4(b)(2)(B) (reasonable probability conditions will not be remedied or relationship poses a threat to child's well-being).

Indiana Code Section 31-35-2-4(b)(2)(B) is written in the disjunctive, and therefore the court needed only to find that one of the three requirements of subsection (b)(2)(B) had been established by clear and convincing evidence. See L.S., 717 N.E.2d at 209. Because we find it to be dispositive under the facts of this case, we consider only whether DCS established, by clear and convincing evidence, that there is a reasonable probability that the conditions resulting in the removal or reasons for placement outside the home will not be remedied. See I.C. § 31-35-2-4(b)(2)(B)(i). The relevant statute does not simply focus on the initial basis for removal for purposes of determining whether a parent's rights should be terminated, "but also those bases resulting in the continued placement outside the home." In re A.I., 825 N.E.2d 798, 806 (Ind. Ct. App. 2005), trans. denied.

Initially, DCS intervened and removed Q.R. because Father was incarcerated for causing the death of another child and Mother was then unavailable to care for Q.R. Father has since consented to the termination of his parental rights. However, the continued placement of the child in family foster care was due to Mother's continued drug use and non-compliance with services and court orders.

The record is replete with evidence that Mother refused to comply with drug screens, tested positive on multiple occasions for marijuana and drugs for which she had no valid

6

prescription, was intoxicated during home-based and child visits, failed to complete services offered to her, and was found in contempt of court. During the CHINS proceedings, she was incarcerated for approximately thirty days and was hospitalized for several days due to a life-threatening drug overdose. Home-based case manager Faith Stefaniak testified that Mother's third suspension of home-based services required "closing out" the services pursuant to program rules. (Tr. 54.) Case manager Meghan Baldwin testified that Mother had a twelve-year history of drug use, sobriety, and relapse and that her cooperation with services was "sporadic." (Tr. 41.) Mother failed to complete DCS monitored services and had requested the discontinuation of visits with Q.R.

As of the evidentiary hearing conducted on August 21, 2012, Mother had been employed "nearly three weeks" following a twelve-year period of unemployment. (Tr. 75.) Mother conceded that she had battled drug addiction for thirteen years and that services offered through DCS had been discontinued. Nevertheless, Mother insisted that she had become clean and sober through self-selected services including AA. She first testified that she had been drug free since January of 2012, but conceded on cross-examination that she had overdosed and nearly died in February of 2012. To support her claim of sobriety, Mother offered into evidence several recent drug screens. However, as the court noted, one screen showed that the sample was diluted and one screen was performed as Mother was being discharged from the hospital in February, where she presumably lacked access to illicit drugs. Apart from these, Mother produced one negative drug screen, that of May 18, 2012.

Mother insists that she has been drug and alcohol-free for several months and that this

7

is predictive of her future stability. She points to testimony of her employment and her positive contact with Q.R. while he is in Grandfather's care. In essence, Mother asks that we reweigh the evidence and accord greater weight to her testimony of her recent efforts and future aspirations. We will not do so. See In re A.A.C., 682 N.E.2d at 544.

DCS presented clear and convincing evidence from which the trial court could conclude that there was a reasonable probability that the conditions resulting in the removal or reasons for placement outside the home would not be remedied.

## Conclusion

DCS established by clear and convincing evidence the requisite elements to support the termination of parental rights.

Affirmed.

NAJAM, J., and BARNES, J., concur.